Hart, J.,
 

 dissenting. As indicated by the majority opinion, the court reverses the judgment in this case because in its opinion the record fails to disclose a proximate causal relationship between decedent’s employment and either the mental strain and excitement
 
 *282
 
 to which the decedent was subjected or the coronary thrombosis causing his death.
 

 Section 1465-68, General Code, a part of the Workmen’s Compensation Act, provides for compensation for a workman’s injury or death “in the course of and arising out of his employment.” This statute requires that a death claim, to be compensable, must be based upon an accidental injury which was the direct and proximate cause of the death. And, to be compensable, the injury must “arise out of” the employment, that is, the injury must have its origin in a risk connected with the employment,, its scope and character, its exigencies and necessities, its conditions and environments, from which employment the injury, though unforeseen, may after the event be recognized to have flowed as a rational consequence.
 

 By virtue of Section 11420-18, General Code, where a special finding of facts by the jury is inconsistent with the general verdict, the former shall control the latter and the court may give judgment accordingly. By present Section 11601, General Code, where, upon the statements in the pleadings or upon the evidence received upon the trial, a party is entitled by law to judgment in his favor, judgment shall be so rendered ' by the court, although a verdict has been found against him, without regard to whether a motion to direct a verdict may have been made or overruled.
 

 Counsel for plaintiff in the instant case first made a motion for judgment notwithstanding the general verdict, on the ground that a special verdict of the jury in answer to the interrogatory required a judgment in favor of the plaintiff, but later filed an amended motion for judgment in favor of the plaintiff notwithstanding the general verdict of the jury for the defendant, on the ground that the evidence in the case and the special verdict of the jury and answer to the in
 
 *283
 
 terrogatory submitted to it justified and required a judgment in favor of the plaintiff. The trial court sustained the latter motion. Although the jury, in the instant case, rendered a general verdict for the defendant, it answered in the affirmative the question: “Was the cause of Taylor McNees’ death, the mental strain and excitement of the driving conditions which prevailed as he drove the trolley bus on the night of January 17, 1944?”
 

 Concerning the interpretation and application of the jury’s answer to the interrogatory in question, the majority opinion says:
 

 “Since the jury’s answer to the special interrogatory finds a causal connection between decedent’s death and the strain and excitement of certain conditions of his employment, it necessarily establishes a causal connection between his employment and the coronary thrombosis. This follows because there is no dispute in the evidence as to the fact that coronary thrombosis was the proximate cause of death.”
 

 With that statement I fully agree. Then, the majority opinion further continues:
 

 “However, the answer to the interrogatory does not establish that there was any
 
 proximate causal
 
 relationship between decedent’s employment and either the mental strain and excitement or the coronary thrombosis or his death. ’ ’
 

 With that statement, as I interpret the record, I am unable to agree. In the first place, it seems to me that when the jury found that “the mental strain and excitement of the driving conditions which prevailed as he drove the trolley bus” caused McNees’ death, it necessarily found that such “mental strain and excitement of the driving conditions” were incidents and risks of his job or employment in which he was then engaged. It seems to me from a common-experience
 
 *284
 
 rather than a metaphysical approach, this-record discloses that these conditions conld arise from no source other than his employment.
 

 Furthermore, the evidence in this case was summed up in a hypothetical question submitted to Fred W. Heinold, a practicing physician and surgeon, and a witness in this case, as follows: That the witness was to assume that the testimony was that prior to the day of McNees’ death he had experienced some dizziness, shortness of breath and heart pains, but had never felt the necessity of any medical assistance for any of these conditions, and had never lost any time from his regular employment up to that day, which employment was bus driver for the Cincinnati street railway; that on the night of his death he was driving one of its regular busses at abou’t eleven o’clock at night and it was an exceedingly foggy night; that it was impossible for him to see the street ahead of him clear enough to drive and he called on one of the passengers to stand on the front step of the bus with the front door open so the passenger could look out around the windshield and see the curb and guide McNees and warn him of anything which might be in the path and also keep him on the line of the street; that the street had a number of turns and he could not set his course in a straight line but had to make a number of turns for the street; that there was another passenger on his bus, a young boy, sitting behind the driver’s seat and looking out of the window on the left side of the bus, who made a game out of reversing the directions given by the man on the step; that the bus was traveling only about five miles per hour, at which speed steering the bus was much more difficult than at its normal course of speed; that after McNees had traveled in that manner for between a half mile and a mile, he operated his bus too far to the left in the street and the trolleys
 
 *285
 
 came off the wires, and in an effort to adjust that situation he got off and on the bus two or more times, went behind the bus and pulled the trolleys in an effort to make them reach the wires and then after his last unsuccessful effort in that respect returned to the bus with the intention of having his bus pushed by another bus which had come up from behind; and that when the second bus had pushed his bus only a foot or two, he collapsed over the wheel with a gurgling sound in his throat.
 

 When asked to give his opinion, based on these facts and reasonable medical certainty, whether there was any causal relation between the events immediately preceding McNees’ death, Heinold replied “that the events previous to the man’s collapse contributed to the collapse and his eventual death because of the tremendous strain that was placed upon this individual’s physical being and his mental being both, but particularly on the strain of his physical effort.”
 

 What were these “events,” previous to McNees’ collapse, which contributed to the collapse and the eventual death? Clearly, in my opinion, these events were the activities, the exigencies and the conditions of his employment as detailed in the hypothetical question.
 

 In my opinion, there was evidence of a causal connection between the activities of the employment and McNees’ collapse resulting in death. This evidence was undisputed and warranted the court, as a matter of law, to enter judgment in favor of the plaintiff notwithstanding the general verdict of the jury.
 

 In my opinion, the judgment in this case should be affirmed.